## IN ARBITRATION PROCEEDINGS
## PURSUANT TO AGREEMENT
## BETWEEN THE PARTIES

| | |
|---|---|
| In the Matter of a Controversy ) <br> ) <br> between ) <br> ) <br> **TEAMSTERS, LOCAL NO. 853 (IBT)** ) <br> ) <br> Union, ) <br> ) <br> and ) <br> ) <br> **A & W DISTRIBUTORS,** ) <br> ) <br> Employer. ) <br> ) <br> <u>Involving Severance and Vacation Pay</u>   ) | **ARBITRATOR'S OPINION AND AWARD** |

On Behalf of the Union:

    Andrew Baker, Esq.
    **BEESON, TAYER & BODINE**
    1404 Franklin Street, 5th Floor
    Oakland, C 94612

On Behalf of the Employer:

    Teresa Ko
    **A & W DISTRIBUTORS**
    450 Taraval Street, PMB 116
    San Francisco, CA 94116

This arbitration proceeding arises pursuant to the Agreement between the **TEAMSTERS, LOCAL NO. 853** (hereinafter "Union") and **A & W DISTRIBUTORS** (hereinafter "Employer" or "Company") under which Morris E. Davis was selected to serve as arbitrator, and whose Findings, Opinion, and Award shall be final and binding upon the parties.

The hearing was conducted on August 29, 2006, in Oakland, California. The parties were afforded full opportunity for the examination and cross-examination of witnesses, introduction of relevant exhibits, and closing statements. The official transcript was received on September 26, 2006.

## ISSUE

The Union offered the following statements of the issues:

Did the Company violate the Collective Bargaining Agreement by laying off Kent Nugen on or about August 31, 2005? If so what is the appropriate remedy?

Did the Company violate the Collective Bargaining Agreement by failing to pay Ron Arioto and Tony Crociani all vacation accrued as of its closure on or about August 31, 2005? If so, what is the appropriate remedy?

Did the Company violate the Collective Bargaining Agreement by failing to pay severance benefits to Kent Nugen, Tony Crociani, and Ron Arioto upon their layoff and/or closure of the [Company] in August 2005? If so, what is the appropriate remedy?

## RELEVANT PROVISIONS OF AGREEMENT

ARTICLE 14.  VACATIONS

Section 1. All employees with twelve (12) months continuous service shall be entitled to one (1) week of vacation with pay. Employees who have completed twenty-four (24) months' continuous service shall be entitled to two (2) weeks vacation with pay. Employees who have completed seventy-two (72) months' of continuous service shall be entitled to three (3) weeks' vacation with pay.

ARTICLE 21. SEVERANCE PAY

Section 1. Whenever an employee is terminated at a location at which he works, he shall receive severance pay benefits pursuant to the provisions set forth below:

a. Upon completion of six (6) full years' of unbroken service, with the same employer, an employee shall be eligible for a severance benefit equal to forty (40) hours' of pay at the employee's straight time rate of pay.

b. The employee will be eligible for an additional forty (40) hours' severance pay benefit for each full additional year of unbroken service, with the same employer, through the fifteenth year. The maximum severance benefit shall not exceed four-hundred (400) hours.

ARTICLE 27  SUCCESSORS AND ASSIGNS

Section 1. This agreement shall be binding upon the parties hereto, their successor-administrators, executors, and assigns. In the event an entire operation is sold, leased, transferred or taken over by sale, transfer, lease, assignment, receivership, or bankruptcy proceedings, such operation shall continue to be subject to the terms and conditions of the Agreement for the life thereof. The Employer shall give notice of the existence of this Agreement to any purchaser, transferee, lessee, assignee, etc. of the operation covered by this Agreement or any part thereof. Such notice shall be in writing with a copy to the Union, no later than the effective date of sale.

ARTICLE 29. SENIORITY

Section 1. In the event of layoffs, the Employer agrees to recognize seniority. In call backs after layoffs, the same principal shall apply.

## FINDINGS OF FACT

Kent Nugen was employed by the Employer, A&W Distributors, until August 19, 2005. He explained that the Employer's drivers signed up for vacations on a sheet posted above the water cooler. However, there was no posted seniority list. He testified that, if there was a conflict, regarding vacation period, the drivers resolved such matters amongst themselves. Nugen further testified that the seniority list made no distinction between Milk and Ice Cream drivers.

By correspondence dated August 11, 2005, from the Employer's owner, Teresa Ko, Nugen was notified that the Employer's company was being sold to two (2) other

businesses. That correspondence also indicated that the Employer's Ice Cream Division would be purchased by Wonder Ice Cream, and the Milk Division would be purchased by Paul's Dairy. Nugen did not receive severance pay, and after his lay-off, he accepted employment with Wonder Ice Cream, a non-union business. (Tr. 22-27; JEx. 2).

Anthony Crociani began employment with A&W Distributors in 1988, driving a non-union school milk route. Approximately one and a half (1½) years later, he was assigned a regular Union route which included milk and ice cream delivery. While working for the Employer, he regularly drove a milk truck, but occasionally drove an ice cream truck when other employees were on vacation. (Tr. 29-31).

When the Employer's company was sold, Mr. Crociani was laid off at the end of August 2005. He did not receive severance pay, and was not hired by either of the successor companies. At the time of layoff, he received three (3) weeks vacation pay; his regular wages; and payment for a partial pay period. However, Crociani did not receive severance pay. (Tr. 35, 38, 86; CEx. 1).

On September 5, 1981, Ron Arioto was originally hired by A&W Distributors as a milk man. At various times during his employment, he drove both milk and ice cream trucks. Crociani testified that, while employed by A&W, vacation was calculated on the basis of employees' hire date. He further testified that, when the Employer purchased A&W, the previous owner (Kenny), told the employees that everything would remain unchanged. However, he did not receive severance pay at the time of the transfer. Crociani also recalled that, during the Employer's ownership of A&W, he only delivered ice cream. When the business was sold on August 31, 2005, he received payments for one (1) pay period; a partial pay period, one week vacation for 2004; and two (2) weeks vacation for 2005. However, he did not receive any severance pay. Thereafter, Arioto

was hired by Paul's Dairy, a company which operates under another Union contract. (Tr. 40-47, 82-83).

Robert Strelo has held the position of Union Business Agent since 1995. He recalled that, in 1997, Union Local 302 merged with his Local 853. However, the related subsequent collective bargaining agreement ("CBA") with A&W Distributors remained unchanged. Also in 1997, after the Employer purchased that business, he was assigned to represent the A&W employees. Strelo further recalled that, based on conversations with the owner (Ko), regarding the sale of A&W, he understood that the ice cream and milk divisions was purchased by two (2) companies, and that one (1) had a Union agreement. During a subsequent discussion with one new owner (Paul's Dairy), he was informed that Grievant Arioto's seniority date was calculated on the date of his hire by that company. After filing the instant grievance, Strelo researched Union records, which disclosed that Grievant Crociani's hire date was April 1, 1989. (Tr. 48-50, 53-54).

Teresa Ko, former owner of A&W Distributors, purchased that business in May 1997, and continued to follow terms of the CBA provided by the previous owner. Thereafter, she negotiated two (2) additional bargaining Agreements with Strelo. She also testified that employees were assigned to either the ice cream or dairy departments. (Tr. 56-60).

Ms. Ko further testified that, when A&W Distributors was purchased, she did not assume any responsibility or liability from the previous owner. Consequently, A&W Distributors, doing business as Enoch Inc., acquired the employees who worked for the predecessor Company as of May 7, 1997. According to Ko's interpretation of the Agreement, May 7, 1997 is the date for calculation of seniority for all employees. In that regard, she testified that, based that hire date, and in recognition of the employees'

Case 3:07-cv-02436-EMC    Document 1-3    Filed 05/07/2007    Page 6 of 11

expertise, they were paid more vacation pay than was required. (Tr. 60-62, 70-72).

Ms. Ko recalled that, in January 2005, when considering a sale of A&W Distributors, she forwarded a fax to Strelo which requested clarification of several items, including the Agreement's successor clause. In part, Strelo replied:

> "Article 27 Successors and Assigns
>
> You are obligated under this Section to give notice of this Agreement to any purchaser, transferee, lessee, assignee, etc. of the operation of A&W under this Contract.
>
> Employees shall be given the opportunity to follow their jobs, provided that work is available. If work is not available with the Successor, then Severance Benefits under Article 21 shall apply. Seniority cans and should be one consideration acknowledged by the Successor. Any employee being retained by the Successor, would have a seniority date calculated from the date they begin employment with the Successor, for lay-of, recall, and vacation selection. (Tr. 66-68; CEx. 3).

Ms. Ko testified that, based on the above, she concluded that Nugen and Arioto were not entitled to severance pay because both were hired by successor companies. She also concluded that seniority applied only for vacation, recall and lay-off, but was not applicable to severance pay. As a result, based on his 1997 hire date, only Crociani was eligible for severance pay. (Tr. 75-77).

## POSITION OF THE UNION

There is no dispute that Grievant Nugen's seniority date is September 1, 1998. The dispute is whether he worked in a separate department from the other drivers, and was therefore laid off out of seniority. Under Article 29, Section 4, departments are defined in the Agreement. Those departments are plant, wholesale, and haulers. Only wholesale drivers were employed under the parties' is Agreement.

Grievant Nugen did not choose his layoff date. Nor did he did quit. Instead, he was let go. That he obtained employment elsewhere, after his layoff, does not detract

form the fact that there was not a seniority lay off. As a result, the issue involves the remedy of damages. Nugen clearly mitigated his damages, but with a non-Unio company, and without pension benefits. Therefore, it is necessary to assess how much is earned under the non-Union company's wage formula, in order to determine if he earned more or less than would have been earned had he stayed at A & W. Also, his lay off is pertinent to severance because he received no severance pay.

Regarding Grievant Crociani's vacation pay issue, the Union withdraws its grievance on the related calculations because he was paid his accrued vacation time. However, Arioto's hire date is September 5, 1981. Under Article 14 (Vacation Pay), the only logical method to apply the vacation entitlements is on an anniversary-year basis. That is, employees complete a year of service on their anniversary date, not on a calendar-year basis. If the parties had intended that vacations to be switched to a calendar-year accrual basis, then additional contractual language would be required to reflect such a change. In this case, there has been no such modified language. Arioto earned an additional three (3) weeks vacation pay between September 1, 2004 and his layoff at the end of August 2005.

In 1997, Ms. Ko purchased the entire operation of A &W under the Agreement's Successors and Assigns clause. When the entire operation was sold, the operations shall continue to be subject to the terms and conditions of the Agreement. That is consistent with how Ko paid the members in terms of wages and benefits. The term "[T]he Employer," as used in Article 27, is defined in Article 1 of the Agreement. "An Employer shall be deemed to be A&W Distributors." The business transition ed from one owner to another. Pursuant to Article 27, the employees' date of hire and seniority rights transferred with them.

In regards to the severance issue, if Grievant Nugen had been allowed to stay until the other employees were laid off (August 31, 2005), he would have had seven (7) years of service, and entitled to two (2) weeks of severance. Under the Agreement, the fact that he obtained other employment, has no bearing on his right to severance pay. With regard to Crociani, he had completed sixteen (16) years of Company employment, and is entitled to ten (10) weeks severance pay. Arioto has more than twenty-one (21) years of service, and his severance is capped at fifteen (15) weeks. Again, the fact that he found other employment has no bearing on his right to severance pay.

To summarize, the Union requests an Arbitrator order that Grievant Nugen be paid for the period he was laid off, out of seniority, from August 19, 2005 through August 31, 2005, and two (2) weeks severance pay. In addition, it is requested that Grievant Crociani be paid ten (10) weeks severance, and Grievant Arioto be paid fifteen (15) weeks severance pay.

## POSITION OF THE COMPANY

The issue in this case is the definition of the word "Company" as used in the parties' Agreement. Therein, "Company" refers to A&W Distributors. However, the Company that operated the business was not A&W Distributors, but Enoch Inc., which conducted business as A&W Distributors. Because Enoch, Inc. began their business relationship as an employer on of May 8, 1997, that is the Grievants' pertinent date of hire.

Also, there is no definition of lay-off in the parties' Agreement. The common meaning is the suspension and dismissal of an employee during a period of inactivity. In that regard, Nugen was not laid off. During negotiations, Wonder Ice Cream insisted that one (1) driver be included in the sale because there was no one to drive the route.

On August 11, 2005, the owner of Enoch, Inc. spoke to Nugen, and he indicated his willingness to work for Wonder. Thereafter, he voluntarily moved to Wonder, and began such employment on August 22, 2005. Nugen's last day with A&W was August 19, 2005. However, failing to pay his related vacation pay was an oversight.

For the sake of expediency, employee hire dates were amended to reflect the first of the year, rather than the actual hire dates. Driver's vacation pay was prorated accordingly. Article 21, Section 3, specifics that seniority is calculated as of the employer's hire date. The employees were hired by Enoch, Inc. on May 8, 1997. Nugen and Arioto are not entitled to severance pay because they are employed. Crociani is entitled to severance pay which should be calculated as of the day Enoch, Inc. assumed control of A&W Distributors. Similarly, vacation pay should be calculated as of that same date.

In summary, Nugen was not laid off. In addition, only Crociani is owed severance pay. Therefore, the grievance should be denied in regards to severance and vacation pay for Nugen and Arioto.

## OPINION

The Union, as the moving party has the burden of persuasion in this contract interpretation dispute. In that regard, plain meaning must be afforded to clear and unambiguous contractual language. Here, the essential issue is whether Enoch, Inc, which conducted business as A&W Distributors, is responsible for the employee benefits acquired during the previous business owner's management. On point, Article 27 states:

> "Section 1. This agreement shall be binding upon the parties hereto, their successor-administrators, executors, and assigns. In the event an entire operation is sold, leased, transferred or taken over by sale, transfer, lease, assignment, receivership, or bankruptcy proceedings, such operation shall continue to be subject to the terms and conditions of the Agreement for the life thereof. The Employer shall give notice of the existence of this Agreement

> to any purchaser, transferee, lessee, assignee, etc. of the operation covered by this Agreement or any part thereof. Such notice shall be in writing with a copy to the Union, no later than the effective date of sale."

The above provision clearly contemplates that, for the life of the Agreement, present or future owners of the Employer's company, operating thereunder, assume all responsibilities and liabilities incurred by the predecessor company. The evidence also clearly shows that the Employer assumed those obligations, and negotiated two (2) subsequent supplemental Agreements with the Union which included the identical contractual provision. Therefore, the Company is responsible for compliance with those provisions.

The Employer argues that, because Grievant Nugen subsequently went to work for the successor company (Wonder Ice Cream), he was not laid off. In that regard, Article 29 states:

> Section 1. In the event of layoffs, the Employer agrees to recognize seniority. In call backs after layoffs, the same principal shall apply.

As stated above, the Employer assumed all responsibility under the Agreement, including that seniority to be applied in lay-off situations. Nugen, the Employer's truck driver and delivery person, continued to perform the same duties for the successor non-union company, Wonder Ice Cream. The evidence shows that Grievants Arioto and Crociani had performed the same duties. At various times, all of the employees delivered milk and/or ice cream. Consequently they are considered to have been in the same employee classification. As a result, the Employer should have applied the seniority clause to all employees, regardless of whether they delivered milk or ice cream at the time of layoff.

The Employer also argued that it was not liable for vacation or severance

benefits incurred under previous owner's CBA, and that the Grievants' pertinent date of hire is the date that it assumed ownership. As stated above, the Employer assumed ownership of the business as well as all responsibilities and obligations due the employees. Therefore, the Company shall recalculate the vacation and severance benefits based on the Grievants' original hire date, regardless of who the owner was at that time. Hence, the Grievants are to be reimbursed for all vacation and severance benefits in accordance with Articles 14 and 21.

## AWARD

1. The grievance is sustained because the Employer violated Articles 14, 21, and 29 of the parties' Agreement;

2. Based upon the applicable seniority clause, Grievant Nugen shall be paid for the week that he was laid off (August 31, 2005). In addition, his total period of employment is calculated to be seven (7) years, which entitles him to two (2) weeks of severance pay;

3. The Grievants shall also be paid the accrued vacation and severance benefits based upon their original dates of hire. Grievant Crociani, had completed sixteen (16) years of Company employment, and is therefore entitled to ten (10) weeks severance pay. Grievant Arioto has more than twenty-one (21) years of service, and his severance pay is capped at fifteen (15) weeks; and

4. The Arbitrator retains limited jurisdiction of this matter regarding all disputes related to implementation of this Award.

Dated: November 13, 2006

_____
Morris E. Davis
Arbitrator